IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANCE HASKELL, | ) | |
|     Petitioner | ) | |
| | ) | |
| vs. | ) | C.A.No. 10-149Erie |
| | ) | |
| LOUIS FOLINO, et al., | ) | Magistrate Judge Baxter |
|     Respondents. | ) | |

### MEMORANDUM OPINION

Magistrate Judge Susan Paradise Baxter[1]

**A.**     **Relevant Procedural and Factual History**

On June 17, 2010, Petitioner Vance Haskell filed the instant petition for writ of habeas corpus. ECF No. 4. Petitioner is a prisoner currently incarcerated within the state correctional system. Petitioner is attacking his state court convictions at docket numbers 731 and 1804 of 1998 by the Court of Common Pleas of Erie County, Pennsylvania. According to the *pro se* petition, Petitioner was convicted of First Degree Murder, Possession of an Instrument of Crime, and "Recklessly Endangering," and sentenced to a term of life in prison. As grounds for habeas relief, Petitioner claims that his trial and appellate counsel provided ineffective assistance in numerous ways.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 5, 18.

Presently pending before this Court is Respondents' motion to dismiss based solely upon the statute of limitations. Pursuant to <u>Holland v. Florida</u>, ___ U.S. ___, 130 S.Ct. 2549 (2010) and <u>Pabon v. SCI Mahanoy</u>, ___ F.3d ___, 2011 WL 2685586 (3d Cir. July 12, 2011), this Court held an evidentiary hearing limited to the statute of limitations issue and appointed counsel, Thomas W. Patton, to represent Petitioner at that hearing.

### B. Statute of Limitations

Respondents move for the dismissal of the petition based upon the one-year statute of limitations set forth in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. § 2244(d).[1] AEDPA requires that a state prisoner seeking

---

[1] The statute reads:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

federal habeas corpus relief file a petition in federal district court within one year after his state judgment of sentence becomes final. 28 U.S.C. § 2244(d)(1)(A).

Here, the state court record reflects that Petitioner was charged with Criminal Homicide/Murder, Firearms Not to be Carried Without a License, Possessing Instruments of Crime, two counts of Aggravated Assault, and Recklessly Endangering Another Person. Following a jury trial, Petitioner was convicted of all charges except one count of Aggravated Assault (which the Commonwealth withdrew). Petitioner was sentenced by the Honorable Ernest DiSantis on November 10, 1998 to a period of life imprisonment for murder plus a period of incarceration of fifteen to thirty months consecutive to the life imprisonment.

Petitioner filed a direct appeal to the Superior Court of Pennsylvania, which affirmed the lower court's judgment on August 23, 1999. The record further reflects that Petitioner did not file a timely petition for allocatur to the Pennsylvania Supreme Court.

Petitioner's state sentence became final on September 24, 1999 (thirty days after the time period in which Petitioner failed to seek appellate review). The statute of limitations commenced running on that date. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review); Kapral v. United States, 166 F.3d 565, 571 (3d Cir. 1999). So then, the statute of limitations within which to file a petition for writ of habeas corpus expired one-year later, on September 24, 2000[2], making the instant petition (filed in June of 2010) untimely.

---

[2] At that time, no petition for collateral relief was pending for purposes of statutory tolling under § 2244(d)(2) which provides that the limitations period is immediately statutorily tolled during the entire pendency of a "properly filed" application for state post-conviction relief. See also Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005); Satterfield v. Johnson, 434 F.3d 185 (3d Cir. 2006).

After determining that a petition is untimely filed, a Court must examine whether any statutory or equitable tolling principles apply in order to save the otherwise time-barred petition. See Holland, ___ U.S. at ___, 130 S.Ct. at 2560 ("[T]he AEDPA statute of limitations defense is not jurisdictional [and] does not set forth an inflexible rule requiring dismissal whenever its clock has run.") (internal citation omitted). Here, Petitioner argues that both statutory and equitable tolling principles apply to his case, and has produced evidence as to both types of tolling.

**C.     Findings of Fact**

**1) Statutory Tolling – State Created Impediment**

The state court record reflects that by the time Petitioner's direct appeal was denied by the Pennsylvania Superior Court on August 23, 1999, Petitioner had been transferred to Attica Correctional Facility in New York State. ECF No. 27, Transcript, pages 10-11. By letter dated September 1, 1999, Petitioner's appointed counsel notified Petitioner that the appeal had been denied. Portions of the letter read:

> The Superior Court has decided that there is no basis upon which they can reverse the decision of the sentence of the lower Court. You are further advised that there appears to be nothing in the decision of the Court that would make any basis for petitioning the Supreme Court to review the decision of the Superior Court. Therefore, <u>we will not be carrying the case further.</u> There is a reported case holding that, if publicly funded counsel makes such a determination, there is **no right** to have publicly funded counsel file a "Petition for Allowance of Appeal." However, if you so desire, feel free to ask the Supreme Court, with your Petition, to appoint either me or other counsel.
>
> A "Facts of Allocatur" sheet is enclosed. We will be returning your "Appellant Copy" transcripts to the Clerk of Court of Erie County. To obtain your transcripts, you should request the sentencing judge to order the Clerk of Courts to send your transcript to you. Make sure you count carefully, since some months have 31 days, and February has 28.

> We are also enclosing information concerning the PCRA. I do not believe failure to Petition for Allowance of Appeal would result in any waiver for the PCRA.

ECF No. 22-24, Hearing Exhibit 9.

By letter dated September 17, 1999, Petitioner sought further information and guidance from his appointed counsel:

> I am submitting this letter to obtain a complete copy [sic] the on my appeal. Also, I wish to be provided with the appropriate forms to file a Petition for Allowance of Appeal.
>
> Please be advised that the copy of the appeal decision I received did not include pages 1-3. After the cover page, the decision begins with page 4. Please provide me with a complete copy of the appeal decision.
>
> Secondly, I am confined in New York Correctional Facility at Attica. I have absolutely no access whatsoever to any law books that would provide me with the necessary information regarding Pennsylvania's laws and Appellate Procedures in particular. I do not have any type of form to file in the Pennsylvania Supreme Court for a Petition for Allowance of Appeal. Nor, do I have access to the Rules of Appellate Procedure in order to obtain further information about requirements of the Petition. Also, I received the incomplete appeal decision with your latter on or about Sept 6, 1999. Therefore, how can I be expected to file papers within 30 days of the decision on August 23,1999?
>
> At any rate, please provide me with the requested information so that I may pursue my case because I am in total darkness without access to Pennsylvania law.

Id. at Exhibit 11.

By letter dated the same date, Petitioner wrote to Judge DiSantis seeking his transcripts and explaining that he was incarcerated out of state and was without legal assistance or legal materials regarding Pennsylvania law. Id. at Exhibit 12.

Again, on the same date, Petitioner sent a self-styled "Petition for Allowance of Appeal from Judgment of Superior Court" to the Pennsylvania Supreme Court. Again, Petitioner explained that he was incarcerated out of state and was without access to legal assistance or legal material on Pennsylvania law. Id. at Exhibit 13. By letter dated September 23, 1999, this

5

document was rejected by the Supreme Court because it did not meet the requirements for a formal petition in accordance with the Pennsylvania Rules of Appellate Procedures. Id. at Exhibit 14.

In the evidentiary hearing, Petitioner testified that the law library at Attica did not contain any legal materials regarding Pennsylvania law, or Pennsylvania Rules of Criminal or Appellate Procedure. ECF No. 27, Transcript, page 33. Petitioner further testified that he did not receive a response from either his appointed counsel or Judge DiSantis. Id. at page 37.

Petitioner tried again to file a petition in the state supreme court by request dated October 5, 1999. ECF No. 22-24, Hearing Exhibit 15. By letter dated October 8, 1999, the Prothonotary of the Supreme Court notified Petitioner that it was rejecting his latest attempt to file a petition because it was not "a formal petition in accordance with the Pennsylvania Rules of Appellate Procedures" and because it appeared that "your time [for filing an appeal] would have expired on September 22, 1999." Id. at Exhibit 16.

Petitioner contacted the Supreme Court as well as the District Attorney's office several times in an effort to file an appeal to the Supreme Court. See Id. at Exhibits 17-19.

### 2) Equitable Tolling

Petitioner was transferred from New York into the custody of Pennsylvania state officials in July of 2007 to begin serving the sentence at issue here. ECF No. 27, Transcript, page 54; see also ECF No. 22-24, Exhibit 79. Petitioner filed a PCRA petition in the Court of Common Pleas of Erie County in June of 2008, seeking the reinstatement of his direct appeal rights. By final order dated September 5, 2008, the PCRA court denied the petition due to its untimeliness. ECF No. 22-24, Exhibit 25.

Petitioner attempted to appeal the denial by filing a Notice of Appeal (which was docketed in the Erie County Court of Common Pleas on September 17, 2008, and docketed in the Superior Court on September 22, 2008). Id. at Exhibit 26.

By two letters dated September 29, 2008, and a briefing order dated October 3, 2008, the Superior Court instructed Petitioner as to how to prosecute his appeal. Id. at Exhibits 34, 35 and 36. All three of these documents were mailed using an incorrect inmate number and the mail log maintained by the prison indicates that Petitioner did not receive any of these documents from the Superior Court. Id. at Exhibits 30, 31. According to the affidavit of Dean Geehring, Mail Inspector Supervisor at SCI Greene, "any correspondence that comes to the institution addressed to an inmate which does not have a valid inmate number on the envelope is returned to the sender along with the notation that the address on the envelope does not contain a valid inmate number." Id. at Exhibit 31.

By letter dated October 14, 2008, Petitioner inquired of the Pennsylvania Superior Court as to the status of his docketing report. Id. at Exhibit 37.

By Order dated November 3, 2008, the Superior Court indicated that Petitioner had failed to file the required docketing statement in a timely manner and that failure to file it within ten days would result in the dismissal of the appeal. Id. at Exhibit 38. This letter was addressed using the wrong inmate number.

By letter dated November 13, 2008 (and time-stamped received by the Superior Court on November 17, 2008), Petitioner explained that he had not received an Appeal Docket Sheet from the Superior Court, despite an entry in the Court of Common Pleas docket sheet indicating that he had received the docket sheet. Id. at Exhibit 39.

By letter from the Superior Court dated November 18, 2008, the Deputy Prothonotary provided Petitioner with a copy of the Criminal Docketing Statement and directed Petitioner to complete and return the document before **December 8, 200<u>9</u>** in accordance with Rule 3517.  <u>Id</u>. at Exhibit 40.  This letter listed the correct inmate number.  <u>Id</u>.  Additionally, another letter from the Deputy Prothonotary dated the same date, but with more explicit instructions as to the Criminal Docketing Statement was sent to Petitioner and indicated a response deadline of **December 8, 200<u>8</u>**.  This second more explicit letter included the wrong inmate identification number on it.  <u>Id</u>. at Exhibit 41.

By Order dated December 3, 2009, the Superior Court dismissed Petitioner's appeal for failure to comply with Rule 3517.  <u>Id</u>. at Exhibit 44.  This mailing was addressed with the wrong inmate number.

Next, by letter dated December 8, 2008, the Deputy Prothonotary informed Petitioner that the Criminal Docketing Statement was received on December 5th, but that his appeal was dismissed on December 3rd for failure to file the Docketing Statement.  The letter goes on to explain that Petitioner may file a petition for reconsideration within thirty days.  <u>Id</u>. at Exhibit 45.  This letter was addressed with the wrong inmate identification number.

By letter dated February 4, 2009 (and received and time-stamped by the Superior Court on February 6, 2009), Petitioner writes:

> As you are aware, I received my criminal docketing statement from your office and returned it before the deadline.  My concern is that since I have returned it to your office, I have not received a date as of yet as to when my brief (appeal) is expected in your office.  Please let me know when by briefs are due so there is no misstep in this very important matter.

<u>Id</u>. at Exhibits 46A, 46B.

By letter dated February 9, 2009, the Deputy Prothonotary of the Superior Court informed Petitioner that his case was dismissed on December 3, 2008 due to his "failure to file a brief." The letter also contained a copy of the briefing schedule which was previously issued on October 3, 2008. Petitioner was further advised that if he wished to reinstate his appeal, "a written formal petition must be filed." Id. at Exhibit 47. This mailing was addressed with the correct inmate number.

In response to the February 9th letter, Petitioner filed "Defendant's Appeal of Prothonotary's Dismissal for Failure to File a Timely Brief." Within that pleading, Petitioner requests that he be allowed to reinstate the appeal and explains that he had not received the briefing schedule, never received any mail in October (as evidenced by the prison mail log), and that the docketing statement was not due until December of 2009. This pleading is signed and dated on March 1, 2009, and time stamped as received by the Superior Court on March 6, 2009. Id. at Exhibit 48.

By Order of the Superior Court dated March 23, 2009, Petitioner's Appeal was construed as an application to reinstate the appeal and was denied without discussion. Id. at Exhibit 49A, 49B. The mailing containing this Order was addressed with the wrong inmate number.

Next, Petitioner wrote several letters to the Prothonotary of the Superior Court to inquire as to the status of his February 9th "Appeal of Prothonotary's Dismissal." Id. at Exhibit 50 (letter dated March 31, 2009); Exhibit 51 (letter dated April 13, 2009); Exhibit 52 (letter dated April 26, 2009); and Exhibit 53A (letter dated August 30, 2009).

By letter dated September 1, 2009, the Deputy Prothonotary of the Superior Court informed Petitioner that his case was "dismissed on December 3, 2008, for failure of not [sic]

filing a docketing statement." Id. at Exhibit 54. The mailing included a copy of the Superior Court docket and was sent to Petitioner using the correct inmate number.

On October 27, 2009, Petitioner filed a second PCRA petition in the Court of Common Pleas of Erie County seeking reinstatement of his PCRA appellate rights nunc pro tunc. Id. at Exhibit 55. On November 23, 2009, Judge DiSantis signed a final order denying Petitioner's PCRA petition. Id. at Exhibit 57. The mailing containing this Order included the correct inmate number.

Petitioner filed a Notice of Appeal on December 3, 2009, requesting in forma pauperis status as well as copies of his transcripts. Id. at Exhibit 58. By Orders dated December 8, 2009, Judge DiSantis granted in forma pauperis status, but denied Petitioner's request for transcripts. Id. at Exhibits 59, 60. These orders both listed the wrong inmate identification number.

By letter from the Deputy Prothonotary dated December 15, 2009, Petitioner was advised to review and advise of any corrections. Id. at Exhibit 63. This letter was addressed with the wrong inmate identification number.

By a second and more specific letter from the Deputy Prothonotary dated December 15, 2009, Petitioner was advised to complete and file the Docketing Statement, along with several other documents, before December 29, 2009. Id. at Exhibit 64. This mailing was addressed with the wrong inmate number.

After the December 15th mail was returned to sender for incorrect inmate number (see id. at exhibit 65), the Deputy Prothonotary resent the December 15th letters on December 21st using the correct inmate identification number. Id. at Exhibit 67, 68, and 69.

By Order dated December 28, 2009, the Superior Court issued a briefing order directing Petitioner to file his brief by February 8, 2010. Id. at Exhibit 70.

By Order dated January 25, 2010, the Superior Court indicated that Petitioner had failed to file his docketing statement in accordance with Rule 3517 and directed him to file it before February 4, 2010. Id. at Exhibit 71. In response, Petitioner certified that he had filed the Docketing Statement. Id. at Exhibit 72.

On February 8, 2010, Petitioner filed the Appeal from the PCRA denial. Id. at Exhibit 73. In a non-precedential opinion dated June 3, 2010, the Superior Court dismissed Petitioner's second PCRA petition. Id. at Exhibit 77.

Two weeks later, on June 17, 2010, Petitioner filed the instant petition for writ of habeas corpus in this federal district court.

**D.     Conclusions of Law**

**1)     Statutory Tolling**

In order to save his untimely petition from the time bar, Petitioner invokes § 2244(d)(1)(B), otherwise known as the state created impediment exception. The statute provides that the limitations period shall run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Id.

Courts have held that inadequate prison libraries can constitute a state created impediment. See Moore v. Battaglia, 476 F.3d 504 (7th Cir. 2007); Whalem/Hunt v. Early, 233 F.3d 1146 (9th Cir. 2000). Such determinations as to whether there was an impediment are highly fact dependent. Whalem/Hunt.

11

Here, the state court record reflects that by the time Petitioner's direct appeal was denied by the Pennsylvania Superior Court on August 23, 1999, Petitioner had been transferred to Attica Correctional Facility in New York State. In the evidentiary hearing, Petitioner testified that the law library at Attica did not contain any legal materials regarding Pennsylvania law, Pennsylvania Rules of Criminal or Appellate Procedure. Petitioner further testified that he did not receive a response from either his appointed counsel or Judge DiSantis.

By failing to provide the **full** opinion in a timely manner, appointed counsel put Petitioner at an extreme disadvantage in pursuing his direct appeal or any post-conviction relief. That disadvantage, coupled with the lack of any Pennsylvania legal materials available to Petitioner during his incarceration in New York, is sufficient to constitute a state created impediment under § 2244(d)(1)(B). This state created impediment statutorily tolls the statute of limitations until one year from the date the impediment is lifted. Here, the impediment was lifted when Petitioner was returned to Pennsylvania in July of 2007.

### 2) Equitable Tolling

Next, Petitioner argues that he is entitled to equitable tolling during the time period in which he pursued an appeal of the PCRA denial.

A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance[3] stood in his way and prevented timely filing. Holland, ___ U.S. at ___, 130 S.Ct. at 2562.

---

[3] The Third Circuit has held that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Merritt v. Blaine, 326 F.3d 157, 169 (3d Cir. 2003) quoting Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001). See also Schlueter v. Varner, 384 F.3d 69, 76-78 (3d Cir. 2004) (attorney's misconduct did not constitute extraordinary circumstances

Here, the record demonstrates that one extraordinary circumstance after another stood in Petitioner's way to prevent timely filing. Beginning with the filing of the PCRA petition in June of 2008, Petitioner diligently pursued his rights (see ECF No. 22-24, Exhibits 34, et seq.) and was frustrated by the repeated clerical errors of the Superior Court which resulted in his not receiving the majority of the Superior Court's mailings. These errors were not caught or rectified even after repeated letters by Petitioner to the Superior Court inquiring as to the status of his appeals. Within two weeks of the final denial by the Superior Court, Petitioner filed the instant petition for writ of habeas corpus. This Court will equitably toll the statute of limitations in this case.

As this Memorandum Opinion does not represent a final disposition of the habeas petition, this Court need not address the certificate of appealability requirement of 28 U.S.C. § 2253.

An appropriate Order follows.

---

where attorney failed to keep promise to file PCRA petition on time and failed to communicate further with petitioner about the status of the case); Johnson v. Hendricks, 314 F.3d 159, 1463 (3d Cir. 2002) (equitable tolling is not warranted where the petitioner relied on erroneous advice from his state public defender that he had one year from the date of denial of post-conviction relief to file his federal habeas petition). Although extraordinary cases of serious misconduct by an attorney may constitute grounds for equitable tolling, tolling is not warranted for "a 'garden variety' claim of attorney negligence." Holland, ___ U.S. at ___, 130 S.Ct. at 2564. Whether a particular situation warrants tolling must be made in a fact-specific, case-by-case determination. Id. at 2563.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VANCE HASKELL, )<br>    Petitioner )<br>    ) | |
| vs. ) | C.A.No. 10-149Erie |
| ) | |
| LOUIS FOLINO, et al., )<br>    Respondents. ) | Magistrate Judge Baxter |

**O R D E R**

AND NOW, this 3rd day of October, 2011;

IT IS HEREBY ORDERED that the motion to dismiss [ECF No. 13] is DENIED.

IT IS FURTHER ORDERED that before October 13, 2011, Respondent shall respond to the allegations of the petition for writ of habeas corpus. The District Attorney shall address all of the following: 1) the exhaustion of state court remedies as required by 28 U.S.C. § 2254, with respect to each claim raised by Petitioner, and if appropriate, whether any claims were procedurally defaulted, and 2) the merits of the petition. The Answer shall comply with Rule 5 of the Rules Governing Section 2254 cases in the United States District Courts. The District Attorney shall furnish this Court with the state court records, including all transcripts, all briefs filed by Petitioner, and all written opinions of the state courts as well as certified copies of all the state courts involved.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge